**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

GIRAY C. BIYIKLIOGLU                                        CIVIL ACTION

VERSUS                                                              NO. 14-1684

ST. TAMMANY PARISH JAIL, ET AL.                  SECTION: "I"(3)

## PARTIAL REPORT AND RECOMMENDATION

Plaintiff, Giray C. Biyiklioglu, filed this *pro se* and *in forma pauperis* complaint against the St. Tammany Parish Jail and the "U.S. Marshalls" [sic], asserting a claim that his rights were violated when the defendants failed to protect him from violence at the hands of a fellow inmate.[1] The undersigned then issued an order advising plaintiff that neither the St. Tammany Parish Jail nor the United States Marshal's Service was a proper defendant and directing him to file an amended complaint.[2] Plaintiff thereafter filed an amended complaint, adding the following defendants: David J. Horchar; Nico Paternostro; St. Tammany Parish Sheriff Jack Strain; and United States Marshal Genny May.[3]

---

[1]   Rec. Doc. 1.

[2]   Rec. Doc. 4.

[3]   Rec. Doc. 7.

Defendant May then filed a "Motion to Dismiss, or Alternatively, Motion for Summary Judgment."[4]  Plaintiff opposed that motion,[5] May filed a reply to that opposition,[6] and plaintiff filed a sur-reply.[7]  For the following reasons, the undersigned recommends that the motion be granted.

May first argues that plaintiff's allegations against her are insufficient to meet the basic pleading requirements of the Federal Rules of Civil Procedure and to state a claim on which relief can be granted.  The United States Supreme Court has explained:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [Bell Atlantic Corp. v.] Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 [2007], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Id., at 555, 127 S.Ct. 1955 (citing Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct. 1955.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id., at 557, 127 S.Ct. 1955.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570, 127 S.Ct. 1955.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556, 127 S.Ct. 1955.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id., at 557, 127 S.Ct. 1955 (brackets omitted).

---

[4]   Rec. Doc. 37.

[5]   Rec. Doc. 40.

[6]   Rec. Doc. 43.

[7]   Rec. Doc. 44.

Two working principles underlie our decision in <u>Twombly</u>.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  <u>Id.</u>, at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  <u>Id.</u>, at 556, 127 S.Ct. 1955.  Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  490 F.3d, at 157-158.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief."  Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678-79 (2009).

In his amended complaint, plaintiff stated his claim as follows:

The plaintiff, Mr. Giray C. Biyiklioglu, was arrested on April 27, 2012, and charged with federal wire fraud charges.  While being held as a pre-trial detainee in the St. Tammany Parish Jail, Mr. Biyiklioglu suffered second degree battery at the hands of his fellow prisoner.

On or about August 2, 2013, Mr. Biyiklioglu requested help from Pot deputy Mr. Nico Paternostro that his cellmate Mr. Myron Saunders threatened to fight him unless Mr. Biyiklioglu move out from cell # A202.  Pot deputy Mr. Paternostro informed Mr. Biyiklioglu and Mr. Saunders that upon consulting with Mr. David J. Horchar, who is his shift supervisor, he would not separate them unless they both agree to protective custody status.  Although Mr. Biyiklioglu requested protective custody, Mr. Saunders rejected, and eventually no action was taken to protect Mr. Biyiklioglu.

On or about August 3, 2013, Mr. Saunders assaulted Mr. Biyiklioglu and broke his jaw and nose.  Deputies removed Mr. Biyiklioglu from the cell and took him to the LSU hospital for emergency treatment.[8]

With respect to May, plaintiff then further alleged:

U.S. Marshal Genny May has municipal liability for disregarding the risk of substantial harm to Mr. Biyiklioglu by acting or failing to act despite her knowledge. Genny May had knowledge of Sheriff's custom or policy of confining federal inmates without classification and segregation.  Substantial risk of inmate attacks was long standing, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that Genny May had been exposed to information concerning the risk and thus must have known about it.[9]

After May filed the instant motion, plaintiff filed an opposition in which he "acknowledge[d] that under Iqbal, his pleading against Marshal Genny May is not supported with well pleaded factual allegations."[10]  Therefore, he made the following additional allegations in his opposition:

1) The USMS has an Intergovernmental Agreement ("IGA") with the St. Tammany Parish Jail for the purpose of detaining persons charged with or convicted of violations of Federal law, or held as material witnesses or federal parole violators; 2) Pursuant to the IGA, the St. Tammany Parish Jail is to provide for secure custody, care, and safekeeping of federal prisoners in accordance with state and local laws, standards, policies, procedures, or court orders applicable to the operations of the facility; 3) Pursuant to the IGA, USMS performs periodic inspections of the facility concerning facility operations, conditions of confinement, and levels of services; 4) The assaults were long standing, pervasive, well-documented, or expressly noted at St. Tammany Parish Jail, and Marshal May had knowledge of prior assaults related to the classification and segregation of inmates at the jail; 5) Marshal May willfully blinded herself to violations of the IGA pertaining to classification and segregation of inmates; 6) Marshal May failed to monitor periodic inspections of the St. Tammany Parish Jail that she knew to be proceeding in violation of applicable contracts, policies, and standards, whose purpose she understood; 7) Marshal May

---

[8]    Rec. Doc. 7, p. 3.

[9]    Rec. Doc. 7, pp. 4-5.

[10]   Rec. Doc. 40, p. 2.

was aware both of the violations of the IGA provision requiring to classify and segregate federal inmates, so that inmates with no propensity for violence cannot be confined with dangerous people in violation with state and local laws, standards, policies, procedures, or court orders applicable to the operations of the facility, and the provision's assault-preventing rationale; 8) As a result of the above violations, the Plaintiff, a non-violent inmate was placed in a housing unit with Mr. Saunders, a violent inmate, thus resulting in the assault.[11]

May filed a reply to plaintiff's opposition, arguing that, even if these additional allegations are considered, they are still insufficient to comply with Iqbal.[12]  Plaintiff then filed a sur-reply in which he begged to differ, opining that his additional allegations are analogous to ones found sufficient by the United States Fifth Circuit Court of Appeals in Doe v. Robertson, 751 F.3d 383 (5th Cir. 2014).[13]  For the following reasons, the undersigned disagrees.

In Robertson, the female plaintiffs were sexually assaulted by Donald Dunn, a male transportation officer, who transported them from an immigration detention center.  In violation of an Intergovernmental Service Agreement ("Service Agreement"), Dunn had transported the plaintiffs alone without a female officer present.   Based on that incident, the plaintiffs claimed a violation of their Fifth Amendment due process right to be free from deliberate indifference to a substantial risk of serious harm.  They sued, *inter alia*, George Robertson and Jose Rosado, federal officials

---

[11]    Rec. Doc. 40, pp. 2-3.  The United States Fifth Circuit Court of Appeals has held that in a case filed by a *pro se* plaintiff, the district court is "required to look beyond the [plaintiff's] formal complaint and to consider as amendments to the complaint those materials subsequently filed." Howard v. King, 707 F.2d 215, 220 (5th Cir. 1983).  Because these allegations in this supplemental filing "embellish[] the original complaint's averments," they should and will be considered in connection with the instant motion.  See id.

[12]    Rec. Doc. 43.

[13]    Rec. Doc. 44.

responsible for the monitoring and administration of the Service Agreement, alleging that the defendants "knew of violations of a contractual provision requiring that transported detainees be escorted by at least one officer of the same gender, and that the officials understood the provision aimed to prevent sexual assault." Id. at 385.  When the defendants thereafter appealed the denial of their motion to dismiss, the United States Fifth Circuit Court of Appeals explained:

> Under Iqbal, we first look to Plaintiffs' Complaint, distilling the well-pleaded factual allegations – whose truth we are bound to presume at this stage – from any unsupported legal conclusions – whose truth we cannot assume.  We conclude that the Complaint contains well-pleaded factual allegations that Robertson and Rosado had actual knowledge both of the Service Agreement violations and of the violated provision's objective of preventing sexual assault.
>
> In the statement of their Bivens claim, Plaintiffs alleged that Robertson and Rosado "exhibited deliberate indifference" in violation of Plaintiffs' Fifth Amendment rights.  At the outset, we observe that this allegation of "deliberate indifference" is merely a legal conclusion.  See Farmer [v. Brennan], 511 U.S. [825,] 837, 114 S.Ct. 1970 [(1994)] (articulating deliberate indifference test).  Although this conclusion might have been "couched as a factual allegation," we cannot accept its truth for purposes of evaluating the sufficiency of the pleadings.  Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955).
>
> However, the Complaint did make two relevant factual allegations:  *1) that Robertson and Rosado "willfully blind[ed]" themselves to violations of the Service Agreement pertaining to sexual assault prevention, and 2) that Robertson and Rosado failed to monitor detainee transports that they "knew to be proceeding in violation of applicable contracts, policies, and standards," whose purpose they understood.  Complaint at ¶ 242.  Stated simply, the Complaint alleged that Robertson and Rosado were aware both of violations of the Service Agreement provision requiring at least one transport officer to be the same gender as that of transported detainees, and of the provision's assault-preventing rationale.*
>
> These factual claims are "well-pleaded factual allegations" and not merely legal "conclusions." Iqbal, 556 U.S. at 679, 129 S.Ct. 1937. *To support their claims, Plaintiffs further alleged that Robertson and Rosado, in addition to their duties to administer the Service Agreement, had on-site operational duties to arrange for detainee transportation, Complaint at ¶¶ 221–22, 226–27; had access to records showing that lone male officers transported female detainees on numerous occasions, id. at ¶¶ 74, 223; and understood the purpose of the Service Agreement provision given their awareness of ICE's history, id. at ¶ 52.  Although these supporting allegations do not conclusively establish that Robertson and Rosado knew*

6

of the Service Agreement violations and of the violated provision's rationale, we
assume – without deciding – the truth of Plaintiffs' factual allegations *because they
are not "naked assertions devoid of further factual enhancement."* Iqbal, 556 U.S.
at 678, 129 S.Ct. 1937 (citation, quotation marks, and alterations omitted).[FN4]

> [FN4]  *If Plaintiffs had merely recited the legal test in* Farmer *by
> alleging that Robertson and Rosado were "aware of facts from which
> the inference could be drawn that a substantial risk of serious harm
> existed, and also drew the inference," then their allegation would be
> no more than "a legal conclusion couched as a factual allegation."*
> Iqbal, 556 U.S. at 678, 129 S.Ct. 1937.  Here, by contrast, Plaintiffs
> allege specific knowledge on the part of Robertson and Rosado – they
> knew about the Service Agreement violations and the rationale
> behind the violated provision.

Robertson, 751 F.3d at 388-89 (footnote omitted; emphasis added).

Although the plaintiff in the instant case has attempted to pattern his allegations after those
in Robertson, he is still missing that which was critical in Robertson – the *additional supporting
allegations* which identified the factual foundation for plaintiffs' conclusory statements that
Robertson and Rosado acted with "actual knowledge" and "willful blindness."  By contrast, all of
plaintiff's factual allegations against May are purely conclusory.  For example, he alleges, without
explanation or foundation, that May "had knowledge of prior assaults related to the classification
and segregation of inmates at the jail," "willfully blinded herself to violations of the IGA pertaining
to classification and segregation of inmates," "failed to monitor periodic inspections of the St.
Tammany Parish Jail that she knew to be proceeding in violation of applicable contracts, policies,
and standards," and "was aware both of the violations of the IGA provision requiring to classify and
segregate federal inmates, so that inmates with no propensity for violence cannot be confined with
dangerous people in violation with state and local laws, standards, policies, procedures, or court

orders applicable to the operations of the facility, and the provision's assault-preventing rationale."[14] Without additional factual allegations identifying the foundation for his assertions that May acted with actual knowledge and willful blindness, plaintiff's conclusory allegations need not be accepted as true and are insufficient to withstand a motion to dismiss.  See Iqbal, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.   Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (citation, quotation marks, and brackets omitted)); Morgan v. Swenson, 659 F.3d 359, 370 (5th Cir. 2011) (In considering a motion to dismiss, federal courts  "do not presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement." (quotation marks and brackets omitted)); see also Yeftich v. Navistar, Inc., 722 F.3d 911, 915 (7th Cir. 2013)  ("In considering a motion to dismiss, federal courts "we need not accept as true ... unsupported conclusory factual allegations.").

For these reasons, the undersigned finds that, under Rule 12(b)(6), plaintiff's complaint, even as amended, fails to state a claim against May on which relief can be granted.  Moreover, plaintiff need not be afforded another opportunity to amend his complaint to attempt to remedy this defect, because, as May shows in her alternative motion under Rule 56 , she is clearly entitled to summary judgment on the underlying claim however it is stated.

Unlike Rule 12(b)(6) motions, motions for summary judgment under Rule 56 are not limited to the allegations of the complaint and serve a different purpose.  The principal purpose of a Rule

---

[14]    Rec. Doc. 40, pp. 2-3 (emphasis added).

56 motion is to isolate and dispose of "factually unsupported claims." See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant.  Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001).  The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather,  "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998).  Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment.  Id.; Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

Here, plaintiff, like the plaintiffs in Robertson, claims a violation of his Fifth Amendment due process right to be free from deliberate indifference to a substantial risk of serious harm.  With respect to such claims, the Fifth Circuit explained in Robertson:

> When a detainee alleges that a federal government official's episodic act or omission violated [his] Fifth Amendment due process right to basic human needs, we must decide whether the official exhibited deliberate indifference under Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  Cf. Hare v. City of Corinth, 74 F.3d 633, 636, 648-49 (5th Cir. 1996) (en banc) (applying Farmer's Eighth Amendment deliberate indifference test to pretrial detainee's Fourteenth Amendment due process claim against state officials).  In Farmer, a transsexual inmate brought a Bivens action against federal prison officials who allegedly failed to prevent a sexual assault, in violation of the inmate's Eighth Amendment rights. The court of appeals affirmed the district court's grant of summary judgment to the defendants on the grounds that the victim had failed to put authorities on notice of any potential danger. The Supreme Court held that a prison official violates an inmate's Eighth Amendment rights by showing "deliberate indifference" to a substantial risk of serious harm when the official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837, 114 S.Ct. 1970. The court adopted a requirement of subjective indifference and explained that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. This standard requires more than negligence, but less than a "purpose of causing harm" or "knowledge that harm will result."  Id. at 835, 114 S.Ct. 1970.

Robertson, 751 F.3d at 387-88.

In her motion, May argues that plaintiff's claim against her must be dismissed because he cannot come forward with competent summary judgment evidence showing that she had any personal involvement with the alleged constitutional violations at the St. Tammany Parish Jail.  In support of her motion, she submitted an affidavit in which states in pertinent part:

> 3.      Among other things, the USMS is responsible for overseeing the management of all  detention matters pertaining to individuals within the Eastern District of Louisiana who are remanded to the custody of the United States Attorney General.  This responsibility includes detention of pretrial

prisoners, such as Plaintiff at the time of the alleged events set forth in Plaintiff's Complaint and Amended Complaint.

4.    The USMS has an Intergovernmental Agreement ("IGA") with the St. Tammany Parish Jail for the purpose of detaining persons charged with or convicted of violations of federal law, or held as material witnesses or federal parole violators.

5.    Pursuant to the IGA, the St. Tammany Parish Jail is to provide for secure custody, care, and safekeeping of federal prisoners in accordance with state and local laws, standards, policies, procedures, or court orders applicable to the operations of the facility.

6.    I do not make day-to-day decisions concerning jail operations or inmate assignments.

7.    I did not have "knowledge of [the] Sheriff's custom or policy of confining inmates without classification or segregation" as alleged in Plaintiff's Complaint and Amended Complaint.

8.    I did not receive any complaints regarding the conditions of Plaintiff's confinement at the St. Tammany Parish Jail prior to the alleged events set forth in Plaintiff's Complaint and Amended Complaint.

9.    If I or other USMS personnel had in fact received any complaint regarding the conditions of Plaintiff's confinement at the St. Tammany Parish Jail, I would have directed USMS personnel to investigate and, if necessary, remedy the complaint.[15]

Although plaintiff has filed an opposition to May's motion, he has neither provided nor

pointed to any evidence in the record to counter May's affidavit or to show in any way that there is

a genuine issue for trial with respect to his Fifth Amendment claim against her.  Although he appears

to suggest that discovery might reveal evidence of her personal involvement, there is no indication

that he attempted to conduct any such discovery at any time either before or after the filing of the

_____

[15]    Rec. Doc. 37-3.

motion for summary judgment, he did not request additional time to conduct discovery, and he does not describe with particularity what he would seek in such discovery or explain why he believes it would result in competent summary judgment evidence.   Therefore, summary judgment is not precluded on this basis.   See, e.g., Douglas v. Houston Housing Authority, 587 Fed. App'x 94, 99 (5th Cir. 2014) ("Douglas argues that the district court erred because it granted summary judgment before she had an opportunity to conduct discovery or amend her complaint. Douglas does not point to any place in the record showing that she actually moved for additional discovery or an opportunity to amend. Accordingly, this argument fails."); Manley v. Invesco, 555 Fed. App'x 344, 349 (5th Cir. 2014) ("Manley did not indicate what particular admissible evidence he was prevented from obtaining, and whether such discovery would constitute competent summary judgment evidence."), cert. denied, 135 S. Ct. 335 (2014); Danos v. Union Carbide Corp., 541 Fed. App'x 464, 467 (5th Cir. 2013) ("To support a motion for additional discovery the movant must show (1) why additional discovery is necessary and (2) how the additional discovery will likely create a genuine issue of material fact.  Finally, these claims must be supported with some particularity.  A plaintiff may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts." (quotation marks and footnote omitted)); Galada v. Payne, 421 Fed. App'x 460, 462 (5th Cir. 2011) ("Galada failed to even request a Federal Rule of Civil Procedure 56 continuance for further discovery in the district court and did not provide the district court with specific facts explaining his inability to make a substantive response to the summary judgment motion and demonstrating how additional time for discovery would have allowed him to present a genuine issue of material fact.").

Simply put:  May has properly informed the Court of the basis for her motion for summary judgment and provided competent evidence in support thereof, while plaintiff has failed to go beyond his pleadings or designate specific facts showing that there is a genuine issue for trial. Accordingly, May is entitled to relief under Rule 56.[16]

Lastly, as already noted, plaintiff's original complaint named the St. Tammany Parish Jail and the "U.S. Marshalls" [sic] as defendants.  It is unclear whether either remains an active defendant in light of the amended complaint.  Nevertheless, even if claims remain against these two defendants, they should be dismissed as frivolous and/or for failing to state a claim on which relief may be granted pursuant under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for the following reasons.[17]

---

[16]   Because the undersigned finds that the claims against May should be dismissed for the reasons explained herein, the alternative grounds argued in her motion need not and will not be discussed in this opinion.

[17]   With respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
>
> > (i) is frivolous or malicious;
> > (ii) fails to state a claim on which relief may be granted; or
> > (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

Moreover, federal law further mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).  Regarding such lawsuits, federal law requires:

Plaintiff's claim against the St. Tammany Parish Jail was brought pursuant to 42 U.S.C. § 1983.  However, "[t]he St. Tammany Parish Jail is a building, not a 'person' subject to suit under § 1983."  Roper v. Strain, Civ. Action No. 10-341, 2010 WL 923151, at *2 n.2 (E.D. La. Mar. 8, 2010); accord Miller v. St. Tammany Parish Jail, Civ. Action No. 08-4694, 2008 WL 5111146, at *2 n.3 (E.D. La. Dec. 4, 2008); Williamson v. Louisiana, Civ. Action No. 08-4598, 2008 WL 5082911, at *3 (E.D. La. Nov. 24, 2008); Smith v. St. Tammany Parish Sheriff's Office, Civ. Action No. 07-3525, 2008 WL 347801, at *2 (E.D. La. Feb. 6, 2008).

Because the United States Marshal's Service is a federal (not state) entity, the claim against it must be construed as a Bivens claim.  See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971); West v. U.S. Marshal, No. 01-30350, 2001 WL 1468197 (5th Cir. 2001); Serrano v. United States Department of Justice, Civil Action No. 01-521, 2001 WL 1190993, at *3 (E.D. La. Oct. 5, 2001).  However, Bivens claims cannot be brought against federal agencies.  FDIC v. Meyer, 510 U.S. 471, 484-86 (1994); West, 2001 WL 1468197, at *1; Moore v. United States Department of Agriculture, 55 F.3d 991, 995 (5th Cir. 1995).  Therefore, "[t]he United States Marshal's Service is not a proper defendant in a Bivens action."  Whayne v. State of Kansas,

---

On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –

    (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
    (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

980 F. Supp. 387, 394 (D. Kan. 1997); <u>accord</u> <u>West</u>, 2001 WL 1468197, at *1; <u>Cleary v. United States Marshal's Service</u>, No. C95-6825, 1998 WL 246445, *3 n.6 (D. Ill. Apr. 20, 1998).

Out of an abundance of caution, the undersigned finally notes that nothing in this Report and Recommendation addresses plaintiff's claims against David J. Horchar, Nico Paternostro, and St. Tammany Parish Sheriff Jack Strain.  Those claims remain pending and will be addressed at a later date.

## **<u>RECOMMENDATION</u>**

It is therefore **RECOMMENDED** that the motion filed by United States Marshal Genny May, Rec. Doc. 37, be **GRANTED** and that the claims against that defendant be **DISMISSED WITH PREJUDICE**.

It is **FURTHER RECOMMENDED** that plaintiff's claims against the St. Tammany Parish Jail and the United States Marshal's Service be **DISMISSED WITH PREJUDICE** as frivolous and/or for failing to state a claim on which relief may be granted pursuant under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from

a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[18]

      New Orleans, Louisiana, this second day of June, 2015.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[18]    <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.